**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ALEX GELLER,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Civil No. 13-14702

AMERICAN INSURANCE COMPANY,

    Defendant.

                                                  /

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

On October 11, 2013, Plaintiff Alex Geller sued Defendant American Insurance Company ("AIC"). The complaint alleges two counts: (1) breach of contract and (2) violation of the Uniform Trade Practices Act, Mich. Comp. Laws § 500.2001 *et seq*. After removing the case to this court, Defendant moved for summary judgment. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, Defendant's motion for summary judgment will be granted.

**I.  BACKGROUND**

Defendant issued a homeowner's insurance policy (the "Policy") to Plaintiff, effective from October 31, 2012 to October 31, 2013. (Pg. ID # 31.) On December 10, 2012, close to midnight, while driving home from the Gold Coast strip club, two people allegedly robbed Plaintiff of numerous pieces of jewelry and a leather jacket. (Pg ID # 164–67.) Plaintiff was heading west on 7 mile road toward Interstate 75 when, waiting at a stoplight, a car bumped his car from behind. (Pg. ID # 166.) The driver of the vehicle that bumped Plaintiff motioned for him to pull over and he complied. (*Id.*)  Upon

exiting his car, Plaintiff claims that two people robbed him of the following items that he was wearing:

| Item | Year of Purchase | Value |
|---|---|---|
| 14 carat gold ring with 1.78 carat diamond | 1995 | $28,615 |
| 18 carat gold chain (weight of 149 grams) | 1997 | $18,500 |
| 14 carat bracelet (weight of 38 grams) | 1997 | $3,800 |
| 14 carat gold ring with 6 diamonds | 1997 | $5,500 |
| Stud earring with 1.25 carat diamond | 1999[1] | $13,500 |
| Ernst Benz chronograph watch | 2005 | $19,650 |
| Black lambskin coat | 2006 | $600 |

(Pg. ID ## 167, 216–21, 176.)  On the day after the alleged robbery, December 11, 2013, Plaintiff called Defendant to report a claim for the stolen items.  (Pg. ID # 169.) The AIC insurance adjustor directed Plaintiff to file a police report and he allegedly did so after the call.[2]  (*Id.*)  Plaintiff subsequently submitted a written claim for the seven items listed above.  (Pg. ID # 337.)  On September 23, 2013, Defendant denied Plaintiff's claim for various reasons, including the Policy's concealment or fraud provision.  (Pg. ID # 23–26.)  The concealment or fraud provision states:

> C. Concealment or Fraud - The entire policy will be void with respect to all insureds and all causes of loss if, whether before or after a loss, any insured has:

---

[1] Plaintiff mistakenly listed the purchase date on the stud earing as 2009 but corrected the date of purchase to 1999 during his examination under oath.  (Pg. ID # 175.)  Defendant does not contest this correction.

[2] It does not appear that Plaintiff has submitted a police report to the court.

2

> 1. intentionally concealed or misrepresented any material fact or circumstance;
>
> 2. engaged in fraudulent conduct; or
>
> 3. made false statements relating to this insurance or during the presentation of a claim.

(Pg. ID # 74.)

Almost a decade before the alleged robbery, on July 2, 2004, Plaintiff filed for bankruptcy.  (Pg. ID # 191.)  Petitioner's bankruptcy petition does not list any of the jewelry he now claims he owned prior to 2004—the 14 carat gold ring with a 1.78 carat diamond, 18 carat gold chain (weight of 149 grams), 14 carat bracelet (weight of 38 grams), 14 carat gold ring with 6 diamonds, and stud earring with a 1.25 carat diamond.  Plaintiff listed his personal property total as "2,550.00" on the petition.  (Pg. ID # 195.)  Specifically, under "furs and jewelry", "various jewelry" with a value of "50.00" is listed.  (*Id.*)  Plaintiff signed the petition on the "signature of debtor" line.  (Pg. ID # 192.)  Above the signature line, the following is written:  "I declare under penalty of perjury that the information provided in this petition is true and correct."  (*Id.*)  On October 13, 2004, the United States Bankruptcy Court for the Eastern District of Michigan issued a discharge of Plaintiff's debt.  (Pg. ID # 188.)  The bankruptcy court closed Plaintiff's estate on June 14, 2006.  *In re Geller*, 04-58776 (Bankr. E.D. Mich.).

In his examination under oath, Plaintiff testified several times that he lied on his bankruptcy petition:

> Q. Well, it says here you had assets consisting of personal property valued in the amount of $2,550.  Was that true?  Was that the extent of your personal property at the time you signed that bankruptcy petition?
>
> A. No.

. . .

Q. And that's a "Schedule B, Personal Property," and if you look at number 5, it says "Books, pictures and other art objects, antiques, stamps, coins, collections or collectibles," there is an "X" placed in the column for "none." Is it true that when you signed this bankruptcy petition, you did not own any antiques or collectibles?

A. Not true.

. . .

Q. Okay. If you look at line 7 of that same page. Same page, line 7, there is a—do you see where it says "Furs and jewelry"?

A. I do.

Q. It says all your jewelry that you own was valued at $50. Is that true at the time you signed this petition?

A. No.

. . .

Q. If you look at the page with the page number 12 at the bottom of it, it says at the top "Schedule C, Property Claimed as Exempt." Do you see there is an entry there for "Furs and jewelry"?

A. I do.

Q. Value of the jewelry claimed exempt, $50. Current market value of property without deducting exemptions, $50. Was that true when you signed this bankruptcy petition?

A. Not true.

(Pg. ID 177–78.) Plaintiff admitted to having read the perjury disclaimer contained in the petition and signing the petition. (Pg. ID # 177.) However, subsequently when asked if he read the petition he answered, "Evidently not. Evidently not." (Pg. ID # 178.)

4

## II. STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

This is a diversity action in which the court applies federal procedural law and state substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

### III. DISCUSSION

Defendant argues that judicial estoppel bars Plaintiff's claims and, further, that Plaintiff's actions amount to a violation of the Policy's concealment or fraud provision and thus render the Policy void. Each argument will be addressed in turn.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule is known as judicial estoppel, and its purpose is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Several factors inform the decision whether to apply judicial estoppel:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would 'create the perception that either the first or the second court was misled[.]' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal citations omitted). The Sixth Circuit has described judicial estoppel "as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750.

Plaintiff concedes that judicial estoppel applies to "any items which are not claimed on a bankruptcy petition that are not subsequently claimed for coverage under an insurance policy." (Pg. ID # 239 (*citing Smith v. Fireman's Fund Ins. Co.*, 16 F.3d 1221 (6th Cir. 1994).)  He nonetheless argues that judicial estoppel should apply only to the items in existence at the time of, and unaccounted for in, his 2004 bankruptcy petition.  Accordingly, Plaintiff seeks to recover $20,250.00 for the Ernst Benz chronograph watch acquired in 2005 and the black lambskin coat acquired in 2006.

The court need not determine whether Plaintiff can be judicially estopped from claiming property acquired after he filed for bankruptcy under the Policy because the Policy is void.  If a court determines that "the contractual language is unambiguous, [it] must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law."  *In re Smith Trust*, 745 N.W.2d 754, 758 (Mich. 2008) (citing *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999)).  As noted earlier, the Policy states:  "The entire policy will be void with respect to all insureds and all causes of loss if, whether *before or after* a loss, any insured has . . . made false statements relating to this insurance or during the presentation of a claim." (Pg. ID # 74 (emphasis added).)  Plaintiff admits that he made several false statements in his 2004 bankruptcy petition about the extent of his personal property.  In particular, Plaintiff listed the total value of his personal property as "2,550.00."  (Pg. ID # 195.) Under "furs and jewelry", he listed "various jewelry" with a value of "50.00."  Plaintiff subsequently submitted an insurance claim, and then brought the present suit, arguing that he is entitled to $90,225 including $69,975 for jewelry that he owned prior to 2004—a 14 carat gold ring with a 1.78 carat diamond, 18 carat gold chain (weight of

7

149 grams), 14 carat bracelet (weight of 38 grams), 14 carat gold ring with 6 diamonds, and stud earring with a 1.25 carat diamond.  As already noted, Plaintiff now concedes that he is not entitled to the value of the items he omitted from his bankruptcy petition.  However, this concession does not blunt Plaintiff's false statements.  Instead, his false statements void the Policy in its entirety.  *See, e.g., Liberty Mutual Fire Insurance Co. v. Scott*, 486 F.3d 418 (8th Cir.2007) (holding that an insured's material misrepresentation regarding her personal property as reflected in discrepancies between an insurance proof of loss and a prior bankruptcy petition voided the insured's coverage); *J.C. Wyckoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1491 (6th Cir. 1991) ("Michigan courts do not distinguish between fraudulent conduct which causes the loss and fraudulent submission of proofs after a loss has occurred.  Both types of fraud completely bar the wrongdoer's right to recover insurance proceeds.").

Plaintiff argues that he did not *knowingly* make a false statement and therefore the Policy cannot be void.  This argument is unavailing.  Michigan law states only that a fire insurance policy[3] must state that it "may be void on the basis of misrepresentation, fraud or concealment" without regard to the willfulness or knowledge of the misrepresentation, fraud, or concealment.  Mich. Comp. Laws. § 500.2833(1)(c); *see also Williams v. Am. W. Home Ins. Co.*, 11-10963, 2012 WL 479992, at *4 (E.D. Mich. Feb. 14, 2012) (explaining that Michigan law formerly required that insurance polices

---

[3] Although this action is based on an alleged theft, the subject homeowner's insurance policy also insures Plaintiff from losses arising from a fire.  As such, the Policy is bound by Mich. Comp. Laws § 500.2833(1).  *No Limit Clothing, Inc. v. Allstate Ins. Co.*, 09-13574, 2011 WL 3648258, at *3 (E.D. Mich. Aug. 18, 2011).

contain language that an insurance policy would be void if the insured *willfully* concealed or misrepresented a material fact concerning insurance but that the law has since been amended and no longer includes such a requirement).  Plaintiff's false statement relating to his insurance renders the Policy void.

Because the court concludes that Plaintiff is not entitled to relief on his breach of contract claim, his claim under the Uniform Trade Practices Act, Mich. Comp. Laws § 500.2001 *et seq.* also fails on the merits.  Defendant's failure to pay Plaintiff's claim did not violate the Act because, as explained herein, under Michigan law the Policy is void.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 10] is GRANTED.

     s/Robert H. Cleland
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated:  March 10, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 10, 2014, by electronic and/or ordinary mail.

     s/Lisa Wagner
     Case Manager and Deputy Clerk
     (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\13-14702.GELLER.GrantDefMSJ.rljr.wpd